IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HILARDO N. JUAREZ,

      Plaintiff,

vs.                                          Civ. No. 00-447 JP/RLP

ELKHORN OPERATING CO., INC.,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On March 19, 2001 Defendant filed a motion for summary judgment (Doc. No. 43).  That motion will be denied.

**I.      Undisputed background facts**

In September 1996 Arco bought the Empire ABO plant, located just outside of Artesia, New Mexico, and hired Defendant to operate it.  During the transition, five employees were not hired or retained by Defendant, leaving twenty-nine total employees at the Empire ABO facility.

Randy McCollum was the Empire ABO Plant Manager.  Defendant hired or retained Plaintiff to be Process Safety Management and Environmental Health and Safety Coordinator ("PSM/EH&S Coordinator") as of October 1, 1996.  As PSM/EH&S Coordinator, Plaintiff was the third-highest paid plant employee, behind Mr. McCollum and one other person.  Plaintiff's primary role as PSM/EH&S Coordinator was to assist Mr. McCollum with process safety compliance.  Plaintiff's duties included performing incident investigations, ensuring training was done, participating in preparing and editing operating procedures, conducting safety meetings, monitoring wells, checking safety equipments, preparing process and instrument drawings, and sending emissions reports to the state.

During or perhaps before March 1998, Plaintiff learned that Arco was interested in hiring Plaintiff or borrowing his services.  Around the same time, Mr. McCollum learned of Arco's interest in Plaintiff.  Soon after learning that Plaintiff might be leaving the Empire ABO plant, Mr. McCollum proposed eliminating Plaintiff's job, although he apparently did not finalize this decision until later.  On October 23, 1998 Plaintiff was made aware that his job was to be eliminated as of November 6, 1998.  Plaintiff never went to work for Arco.  On March 28, 2000, Plaintiff filed suit.  He alleges that the loss of his job amounts to national origin discrimination in violation of Title VII and racial discrimination in violation of 42 U.S.C. § 1981.

## II.    Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c).  When applying this standard, the factual record and reasonable inferences therefrom are examined in the light most favorable to the party opposing summary judgment.  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).  The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U. S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  <u>Bacchus Indus. Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party has a "wide berth to prove a factual controversy exists."  <u>Jeffries v. Kansas</u>, 147 F.3d 1220, 1228 (10th Cir. 1998).

## III.   Analysis

The same elements and methods of proof apply to both discrimination claims in this case.

Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1225 n.4 (10th Cir. 2000).

**A.      First three elements of Plaintiff's prima facie case**

In the absence of direct proof of discrimination, the Tenth Circuit employs the burden-shifting approach announced in McDonnell Douglas Corp. v. Green, 997 F.2d 793, 796-97 (10th Cir. 1993). Id. at 1225.  In cases such as this, involving the loss of Plaintiff's position, Plaintiff must show that he was (1) within the protected group, (2) adversely affected by the elimination of his position, and (3) qualified for the position.  Hooks v. Diamond Crystal Specialty Foods, 997 F.2d 793, 800 (10th Cir. 1993) (citing Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988)), overruled in other part by Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995).

Through his mother, Plaintiff is of Mexican origin.  29 C.F.R. § 1606.1 (2001). (prohibiting discrimination on the basis of "an individual's, or his or her ancestor's, place of origin").  Defendant admitted this fact during discovery.  Defendant does not dispute that Plaintiff was adversely affected by the job elimination.  Defendant also does not dispute that Plaintiff was qualified for the PSM/EH&S position which Defendant eliminated.  As Defendant explained at the June 11, 2001 pretrial conference, its concerns were with Plaintiff's performance, not his qualifications.  Defendant, through Mr. McCollum also stated that Plaintiff was qualified for other positions at the Empire ABO plant.  Pl's Ex. 3 at 13.  Only the final element Plaintiff's prima facie case is in serious dispute.

**B.      Final element of Plaintiff's prima facie case**

The parties disagree on the applicable legal standard.  Plaintiff's position is that he completes his prima facie case, and creates a rebuttable inference of discrimination, when he

demonstrates that Defendant retained non-Mexican Americans or Hispanics in positions for which he was qualified.  In support he relies on cases involving allegations of age discrimination during an employer's reduction in force.  Pl's Resp. at 2 (citing Branson, 853 F.2d at 771 (affirming that fourth McDonnell Douglas element met by showing plaintiff was treated less favorably than younger employees during reduction in force); Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1138 (10th Cir. 2000) (similar)).

The most closely analogous case, which Defendant contends states the applicable standard, is Hooks.[1]   The Tenth Circuit said in Hooks that a plaintiff claiming that his job was eliminated because of his race must show, as the fourth and final element of his prima facie case, evidence "from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Hooks, 997 F.2d at 800.  The Tenth Circuit explicitly borrowed this test from Branson, an age discrimination case, thus suggesting that age discrimination cases are sufficiently similar to race or ethnic discrimination cases such as this. The Tenth Circuit in Branson indicated that "[e]vidence that an employer fired [a protected employee] but retained [non-protected ones] is sufficient to create a rebuttable presumption of discriminatory intent. . . ." Branson, 853 F.2d at 171; see also Stone, 210 F.3d at 1138 (stating that prima facie burden met where plaintiff points to showing that employer could have retained her but instead retained non-protected, i.e., younger employees); cf. EEOC v. Horizon/CMS Healthcare, Corp., 220 F.3d 1184, 1195 n. 7 (10th Cir. 2000) (warning that to avoid "short-

---

[1] At the same time, Defendant also contends that reduction in force cases are inapposite. Hooks, of course, is a reduction in force case.  Hooks, 997 F.2d at 795, 800.  If Defendant intends to make a distinction between cases in which an employer reduces its work force by one and those in which more than one job is cut, Defendant has failed to articulate clearly this distinction and failed to explain why it makes a difference.

4

circuit[ing]" a plaintiff at the prima facie stage, the better approach is to first ask if the plaintiff was treated differently than non-protected individuals, then permit the plaintiff to show pretext).

In other words, both parties appear to be right. <u>Hooks</u> states the applicable test for the final <u>McDonnell Douglas</u> element. And Plaintiff meets the test in showing that Defendant retained employees outside of Plaintiff's protected class. Defendant does not dispute that non-Hispanics or non-Mexican Americans were retained in positions for which Plaintiff was qualified when Plaintiff's job was eliminated.

Nevertheless, Defendant's position that Plaintiff must show something more at this stage than the mere fact that Defendant retained non-Hispanic employees is not without support. For instance, the Tenth Circuit in <u>Hooks</u> did not consider, with respect to the fourth <u>McDonnell Douglas</u> element, that the employer retained at least one non-Black employee. Instead, the Tenth Circuit looked at allegations such as whether the plaintiff had more seniority than others who did not lose their jobs and that the plaintiff's job was the only supervisory position eliminated at his plant. <u>Hooks</u>, 997 F.2d at 800 (finding no evidentiary support for these contentions, affirming summary judgment for the defendant).

Accordingly, the Court turns to some of the circumstantial evidence from which one might reasonably infer that Defendant intended to discriminate against Plaintiff on the basis of his national origin or race. Some of the allegations which Plaintiff seems to claim support an inference of discrimination are so poorly articulated that the Court can draw no conclusions from them (e.g., allegation concerning the position of "mechanical integrity coordinator" or the "mechanical integrity function," Pls' Resp. at 16-17). Others rely on exhibits that do not support the stated proposition (e.g., allegation concerning Ron Dutchover's non-selection for

"automation technician," Pl's Resp. at 18, citing Ex. 5 and non-existent Ex. 8, and allegation that Hispanics were being denied overtime hours or overtime pay, Pl's Resp. at 19, citing Ex. 1 at 89-96).  And still others (e.g., allegation that Plaintiff was denied a raise, Compl. ¶¶4.20.6-7) are just plain false.  Def's Ex. B at 57.

Nevertheless, Plaintiff more clearly sets forth and supports other allegations, meeting his prima facie burden.  For example, Plaintiff and Mr. McCollum indicated that in 1998 another Elkhorn employee, Kyle Stephenson, was selected along with Plaintiff to take a pipe inspection certification class.  Mr. McCollum selected Mr. Stephenson to go first.  Mr. Stephenson attended the class, then took the inspection certification test and failed.  Plaintiff testified, without objection or contrary evidence from Defendant, that he was to take the class next and that Defendant did not intend to pay for another round of training for Mr. Stephenson.  Defendant apparently changed its mind, and instead of sending Plaintiff to pipe inspection class, Defendant sent Mr. Stephenson a second time.  Defendant maintains only that Plaintiff was considered for the training but that he lost his job before he could attend.

For another example, it is undisputed that two non-Hispanic employees who resigned in 1997 were told they would be welcomed back at Elkhorn.  Plaintiff testified that Mr. McCollum told him that there would never be a position for him again at Elkhorn.[2]  Defendant attacks this assertion on two fronts.  First, Defendant claims that Title VII bars reference to events occurring more than 300 days before the filing of Plaintiff's charge.  Nevertheless, any failure on the part

---

[2] Mr. McCollum stated only that he would have considered Plaintiff for open positions at the time of Plaintiff's termination had there been any openings for which Plaintiff was qualified. Viewed in a light most favorable to Plaintiff, this statement is not inconsistent with Plaintiff's assertion that Mr. McCollum told him there would never be a place for him at Elkhorn.

6

of Defendant to welcome Plaintiff back does not form the basis of Plaintiff's charge, thus making the statute of limitations irrelevant. Plaintiff offers Defendant's treatment of others as "background evidence." Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1248 n. 10 (10th Cir. 1999). Even if the statute of limitations were implicated, allegations about Defendant's treatment of non-protected employees in 1997 are admissible because the 1997 conduct is part of an allegedly continuing practice. Mascheroni v. Board of Regents of University of California, 28 F.3d 1554, 1561 (10th Cir. 1994). Only in October or November 1998 when Plaintiff found himself in a similar situation and learned of allegedly disparate treatment was he aware of the need to assert his rights. Id. Defendant's real objection seems to be its second: relevance. Defendant asserts that one cannot compare employees who resigned with those such as Plaintiff who left involuntarily. The critical inquiry in this instance though is not why all three men left, since in Defendant's view all three left while qualified to work at the Empire ABO plant, but whether they would be welcomed back if a position for which they were qualified were open.[3]

For yet another example, it is undisputed that at an annual safety dinner, held at an unspecified time, Mr. McCollum mentioned only Ron Dutchover's injury. The mention of this injury at the safety dinner apparently caused great embarrassment to Mr. Dutchover, who is Hispanic, and his family. Defendant contends that Mr. Dutchover's injury was the only one mentioned because his "was the only injury that required a day missed from work." Def's Br. at 22 n. 3; see also Def's Br. Ex. A ¶17. However, it is also undisputed that a non-Hispanic

_____

[3] Defendant objects to Plaintiff's assertion, made by way of a third party declaration, that Mr. McCollum told people other than Plaintiff that Plaintiff would never work there again. I do not reach Defendant's objection, and have not considered any alleged statement Mr. McCollum made to others because I find that Plaintiff has proved his prima facie case without such statements.

employee, Robert Chambers, suffered an injury not long after Mr. Dutchover.  As a result, Mr.

Chambers missed so much work that he used all of his sick leave and most of his vacation leave.

It may be that Mr. McCollum meant to address only work-related injuries in his comments at the

annual safety dinner and therefore did not mention off-the-job injuries such as that of Mr.

Chambers.  But Defendant does not makes this distinction.  Bound as I am to view the facts in a

light most favorable to Plaintiff, I cannot make it either.

Plaintiff's burden at this stage is light.  EEOC v. Horizon/CMS Healthcare, Corp., 220

F.3d 1184, 1195 n. 7 (10th Cir. 2000) (citation omitted).  "The presumption arising under the

first prong of McDonnell Douglas is a relatively weak inference that corresponds to the small

amount of proof necessary to create it."  Id. (quotation omitted).  Viewing the evidence in a light

most favorable to Plaintiff, as I must, I cannot conclude that the incidents which Plaintiff cites

are isolated, Patrick v. The Williams Cos., Inc., No. 94-5166, 1996 WL 139602, **3 (10th Cir.

March 28, 1996), or not logically connected, Pumpkin-Wilson v. Sheets, No. 95-7175, 1996 WL

731235, **3 (10th Cir. Dec. 20, 1996).  Although the evidence of discrimination is not

particularly robust, it is enough to meet Plaintiff's prima facie burden.

### C.     Reasons for discharge and possibility of pretext

Having demonstrated a prima facie case, Plaintiff has shifted the burden of production to

Defendant to articulate a legitimate, facially non-discriminatory reason for the employment

decision.  Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994).  Defendant contends that it

eliminated Defendant's position after determining that Plaintiff was not performing his job

duties.[4]  The burden therefore moves back to Plaintiff to prove that this reason is pretextual, i.e.,

unworthy of belief.  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).  Plaintiff may

establish pretext or survive summary judgment by revealing, among other things, inconsistencies

or contradictions in the employer's reason, or disputed facts as to it.  Horizon/CMS Helathcare,

220 F.3d at 1197-98.  A finding of pretext is, of course, not a finding that Defendant acted in a

discriminatory manner.  Randle, 69 F.3d at 45 n. 18.  That determination is reserved for the jury.

Id.

        Plaintiff has again met his burden.  First, on March 25, 1998, when the elimination of

Plaintiff's position was initially mentioned, Mr. McCollum stated no reservations about

---

[4] Specifically, Defendant contends that it eliminated Plaintiff's position after determining
that Plaintiff "was not performing many of the duties expected of him and many of his job duties
were being performed by other employees."  Def's Br. at 18-19.  Defendant gives this assertion
its own paragraph, which is preceded by a discussion of case law and followed by what can only
be described as examples of Plaintiff's failure to perform.  Nevertheless, the following colloquy
occurred during Mr. McCollum's deposition:

        Q.  Is it accurate to say that what you were doing at that time was eliminating a position,
        not discharging Mr. Juarez because of any performance problem?
        A.  Yes.

Pl's Ex. 3 at 12-13.  Plaintiff characterized this testimony as a statement that he was not
terminated for any performance problem.  Pl's Resp. at 9.  Defendant described Plaintiff's
characterization as "clearly" a misinterpretation.  Def's Reply at 4.  "He [Mr. McCollum] never
said that Plaintiff's termination was not because of any performance problem."  Id.  Also, after
listing ways in which Plaintiff was allegedly not performing his duties or ways in which others
were performing Plaintiff's duties for him, Defendant then comments, "one wonders how
Plaintiff filled his days."  Def's Br. at 19.
        I make these observations simply in an effort to do what Defendant has failed to do,
namely, to pin down, with precision, exactly what legitimate, non-discriminatory reasons it
presently advances for Plaintiff's job loss.  The arguments and evidence suggest that (1)
Defendant may at one time have explained eliminating Defendant's position on the ground that it
just did not have enough work for him to do, (2) Defendant later changed its justification, and (3)
the only legitimate non-discriminatory reason which Defendant advances now is Plaintiff's
inadequate performance.

Plaintiff's performance.  Def's Ex. A. Ex. 1.  To the contrary, Mr. McCollum was at the time

quite laudatory of Plaintiff and his abilities.  Yet by the time Mr. McCollum executed his

affidavit, his views with respect to Plaintiff's performance had changed dramatically.  Defendant

contends that Mr. McCollum's positions are not inconsistent.  "Afterwards, [presumably after

March 25, 1998] he [Mr. McCollum] began to realize that the PSM/EH&S Coordinator position

did not warrant a full-time position and the affidavit lists the reasons why."  Reply at 4.  This is

not fully accurate.  By March 25, 1998, Mr. McCollum already believed Plaintiff's job should be

eliminated.  Further, as of March 25, 1998, Mr. McCollum had reasons for his decision:

Plaintiff's duties could be divided among existing employees.  Certainly Mr. McCollum's

affidavit also lists reasons why Plaintiff's job was eliminated, but those new reasons, critical of

Plaintiff, are difficult to square with the praise Mr.McCollum had for Plaintiff in March 1998.

Thus, Plaintiff has demonstrated that a dispute of material fact exists as to each allegation in Mr.

McCollum's affidavit concerning Plaintiff's poor performance.  Some sort of investigation, not

documented in the record, between March 25, 1998 and October 1998 may have turned up

evidence that Plaintiff was underperforming.  But on the other hand, there could be more

nefarious reasons for Defendant's subsequent change of positions.  Mr. McCollum's true

motivation presents a classic jury question.  Aurora, 69 F.3d at 441 n. 18.[5]

   Next, some of the "undisputed facts" which Defendant offers to support the thesis that

Plaintiff's performance was deficient suggest only that Defendant just did not provide enough

--------

[5] Interestingly, Plaintiff will likely rely on the March 25, 1998 letter which commends his
abilities to demonstrate to the jury that he was adequately performing his job.  At the same time,
he will need to prove to the jury that the March 25, 1998 letter actually masked Defendant's
discriminatory animosity or that Mr. McCollum acquired a dislike for Hispanics or Mexican-
Americans sometime after March 25, 1998 but before October 1998.

work for Plaintiff to do.[6]  For example, Defendant asserts that incident investigations, management of changes, process and instrument drawings, and operating procedures did not take up much of Plaintiff's time.  Similarly, Defendant maintains that a process hazard analysis for which Plaintiff was responsible was complete by the time Plaintiff lost his job.  Even if true, these assertions do not suggest that Plaintiff was not performing, thus casting doubt on whether Defendant really eliminated Plaintiff's job because of performance issues.[7]

Further, Defendant overstates the list (which begins on page 19 of its brief) of ways in which Defendant maintains that Plaintiff was not performing his job duties.  For example, Defendant says that it had to hire someone else to complete the process hazard analysis for which Plaintiff was responsible.  Asked twice if he completed the process hazard analysis or got it done, Plaintiff answered affirmatively.  Def's Ex. B at 68.  For another example, Defendant asserts that Plaintiff was responsible for sending emission reports to the state but was not doing so.  In support, Defendant calls attention to a portion of Plaintiff's deposition in which he testified simply that "Robert Livingston[] also handled environmental reporting for the flaring."  Def's Ex. B at 71.  A few pages later, counsel confirmed that Plaintiff sent emissions reports then asked how often he did so, to which Plaintiff replied, "Quarterly."  Def's Ex. B at 78-79.  Defendant also identifies one of Plaintiff's responsibilities as "ensuring that training was done."  Def's Br. at 19.  Defendant then faults Plaintiff because an Operations Superintendent scheduled

---

[6] To the extent that Defendant argues now, as opposed to March 25, 1998, that it eliminated Plaintiff's job simply because there was not enough work, Defendant's motion will be denied for failure to provide "a short, concise statement of the reasons supporting its motion." D.N.M. LR-Civ. 56.1.b.

[7] Defendant later repeats its assertion concerning the process hazard analysis, this time adding that it had to hire someone else to complete this work.

11

training classes and because some of the safety training was performed by a contract safety company.  Plaintiff testified though that a contractor conducted only some of the training and that he ensured that training and safety meetings were done or scheduled.  Def's Ex. B at 76, 78. Defendant also criticizes Plaintiff for not taking calls on weekends.  Yet Defendant does not demonstrate that Plaintiff's job duties included responding to weekend calls.

In sum, there are inconsistencies, contradictions, and issues of material fact as to the reason Defendant provides for eliminating Plaintiff's job.  Combined with Plaintiff's prima facie case--not a particularly strong one, but a case nonetheless--a trier of fact may conclude that Defendant unlawfully discriminated against Plaintiff.  <u>Reeves v. Sanderson Plumbing Prods.</u>, <u>Inc.</u>, 530 U.S. 133, 148 (2000).

IT IS THEREFORE ORDERED THAT Defendant's motion for summary judgment is denied.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**